MATTHEW N. METZ, SBN 154995
METZ LAW GROUP, PLLC
810 3rd Avenue, Suite 700, Seattle, WA 98104
Tel: (206) 583-2745;  Fax: (206) 625-8683
matthew@metzlaw.net

COOPER & LEWIS
KENNETH D. COOPER, SBN 47616
5550 Topanga Canyon Boulevard, Suite 200, Woodland Hills, California 9l367
Tel:  (8l8) 594-0011; Fax: (818) 594-0797
ken@cooperlewislaw.com

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LAY SIOK LIN,<br><br>              Plaintiff,<br><br>      vs.<br><br>PLATINUM TOO, LLC, WILLIAM TEITELBAUM, BRUCE MABEY,<br><br>              Defendants. | **Case No. CV-07-05551 WHA**<br><br>**PLAINTIFF LAY SIOK LIN'S OPPOSITION**<br>**TO DEFENDANTS' MOTION TO TRANSFER** |

Plaintiff Lay Siok Lin hereby opposes Defendants' Teitelbaum, Mabey, and Platinum Too, LLC's motions to dismiss, transfer, or stay the instant proceedings.

## I. INTRODUCTION

Plaintiff Lay Siok Lin is suing to recover funds lost to Defendants' Teitelbaum, Mabey, and Platinum Too, LLC's investment fraud scheme.  Defendant William Teitelbaum, and his associate Defendant Bruce Mabey, set up a Utah company named Platinum Too, LLC in April, 2004.  Shortly thereafter, Mabey and/or Teitelbaum went to

CASE NO. C 07 5551 WHA

1

PLAINTIFF LAY SIOK LIN'S OPPOSITION
TO DEFENDANTS' MOTION TO TRANSFER

Hong Kong, Indonesia, Las Vegas, and elsewhere peddling the high returns that Platinum Too, LLC would make via Teitelbaum's and Mabey's inside contacts with ProtoStar, Ltd., a San Francisco based technology startup anticipating an initial public offering. Once Platinum Too received more than $6 million in investment money from Defendant Lay Siok Lin and others, Platinum Too executives Teitelbaum and Mabey did not invest the money as promised, but rather utilized the majority of money for themselves for four brand new Mercedes-Benz vehicles, jewelry, personal investments, and large cash withdrawals.  They kept the investors at bay for more than two years through a series of lies and deceptions.  In August, 2007, counsel for Lin began to press counsel for Teitelbaum for payment.  On October 31, 2007, Defendant Lay Siok Lin sued William Teitelbaum and Bruce Mabey for securities fraud and other similar offenses in the Northern District of California, the U.S. forum most closely connected with the dispute. Unbeknownst to Defendant, William Teitelbaum had already filed an action for declaratory judgment against Lay Siok Lin in the Eastern District of New York on September 21, 2007.

Under 28 U.S.C. § 1404(a), the question of whether to transfer an action to another suitable venue is governed by a balancing test that assesses convenience, efficiency, and the interests of justice.  As shown below, the balance of these factors, and others that are considered on a motion to transfer, weigh strongly in favor of retaining jurisdiction of this matter in the Northern District of California.

Non-party witnesses, Philip Father and John Froelich, CEO and CFO of ProtoStar, Ltd., the company which Teitelbaum and his company Platinum Too, LLC, professed to

CASE NO. C 07 5551 WHA

2

PLAINTIFF LAY SIOK LIN'S OPPOSITION
TO DEFENDANTS' MOTION TO TRANSFER

represent when securing investments from Lay Siok Lin, are based in San Francisco, California.  Another crucial witness, Mei Lin Lay, who was the main recipient of Plaintiff William Teitelbaum's marketing pitches, and who encouraged her sister to invest in Platinum Too, LLC based on Teitelbaum's representations, resides part of the year in San Jose, California.  Many of the key meetings relating to the commission of securities fraud by Teitelbaum's company Platinum Too, LLC took place in the Northern District of California.

Aside from Plaintiff William Teitelbaum, there is no critical witness located in the Eastern District of New York.  There is, as shown below, no reason to transfer this case to New York, a district which is thousands of miles away from important sources of evidence in this case and the location of the alleged misstatements that underlie this action.

Venue in the underlying securities fraud action is proper in the Northern District of California pursuant to 15 U.S.C. § 77v(a).  Trial of this case would be easier and more expeditious in the Northern District of California, and the interests of justice would be much better served.

**II. FACTUAL BACKGROUND**

From April, 2004 through December, 2005, Teitelbaum and his associate Bruce Mabey sought to secure multi-million dollar investments in Platinum Too, LLC a newly formed Utah Limited Liability Company that they had created.[1]  Teitelbaum and Mabey represented themselves as high level investment brokers with ability to place investments

---

[1] Dec. of Mei Lin Lay, ¶¶ 3, 8  (Appended as Exhibit B to the Declaration of Matthew N. Metz submitted herewith)

CASE NO. C 07 5551 WHA
3
PLAINTIFF LAY SIOK LIN'S OPPOSITION
TO DEFENDANTS' MOTION TO TRANSFER

in exclusive business opportunities at high rates of return.[2] They boasted in particular of their inside access to top executives of ProtoStar, Ltd. a San Francisco based satellite communications provider, and their ability to obtain very high rates of return in said investments.[3] They told Lay Siok Lin and her sister Mei Lin Lay that they would invest said funds in ProtoStar, Ltd.[4]

Mabey and/or Teitelbaum met with Mei Lin Lay, the sister of Lay Siok Lin, on three separate occasions in the San Francisco Bay area regarding the ProtoStar investment, as well as in Hong Kong, Indonesia, Manhattan and Las Vegas.[5] No meetings whatsoever occurred in the Eastern District of New York.

Mabey and Teitelbaum convinced Mei Lin Lay to obtain investments in their company Platinum Too, LLC from her sister Lay Siok Lin, and an associate, Aziz Mochdar.[6] Lay Siok Lin and Mochdar loaned more than $4 million to Platinum Too, LLC, as evidenced by promissory notes.[7] Other clients and associates of Mei Lin Lay also invested in Platinum Too, LLC. Teitelbaum and Mabey promised that said funds would be invested at a 35% rate of return, and that the funds would be placed in Protostar, Ltd. Teitelbaum, Mabey, and Platinium Too, LLC sought to establish a wide network to obtain similar promissory notes from Indonesian, Hong Kong, and other Asian investors.[8]

---

[2] *Id.*, ¶3-5
[3] *Id.*, ¶3-5
[4] Dec. of Lay Siok Lin, ¶¶2-3 (Appended as Exhibit C to the Declaration of Matthew N. Metz submitted herewith); Dec. of Mei Lin Lay, ¶¶ 4-5
[5] Dec. of Lay Mei Lin, ¶¶ 9-12
[6] Dec. of Lay Siok Lin, ¶5; Dec. of Mei Lin Lay, ¶5
[7] Dec. of Lay Siok Lin, ¶4,5; Dec. of Mei Lin Lay , ¶6,7
[8] Dec. of Lay Siok Lin, ¶6 Dec. of Mei Lin Lay, ¶6,7

CASE NO. C 07 5551 WHA

4

PLAINTIFF LAY SIOK LIN'S OPPOSITION
TO DEFENDANTS' MOTION TO TRANSFER

From December, 2004 through September 15, 2005, Teitelbaum and Mabey continued to inform Lay Siok Lin and Mei Lin Lay that the funds were invested in ProtoStar, Ltd., as they sought to obtain Mei Lin Lay's cooperation in obtaining additional investment clients.[9]

Once Teitelbaum and Mabey had convinced Lay Siok Lin, Mochdar, and their associates to invest more than $4 million in Platinum Too, LLC, they did not invest the money as promised in ProtoStar, Ltd. as promised. Rather, they have refused to repay nor account for one cent of the more than $5 million contractually promised.[10]

In 2006, Mei Lin Lay had a number of meetings with Bruce Mabey of Platinum Too in San Jose and San Francisco. At these meetings, she pressed Mabey for repayment of the Lay Siok Lin and Aziz Mochdar loan, but said amounts were never repaid.[11]

In August, 2007, counsel for Lay Siok Lin began to press Teitelbaum for payment.[12] Not having received a serious response to her demands from Teitelbaum or Mabey, Lay Siok Lin filed the lawsuit suit at bar on October 31, 2007 against Teitelbaum, Platinum Too, and Bruce Mabey in the U.S. District Court for the Northern District of California, the district where the money she sent to Platinum Too was to have been invested.

At the time of filing her suit, neither Lay Siok Lin nor her counsel knew that Teitelbaum, had previously made a bid to retain venue near his home by filing the action

---

[9] Dec. of Mei Lin Lay, ¶8
[10] Dec. of Lay Siok Lin, ¶¶7-8
[11] Dec. of Mei Lin Lay, ¶9-12
[12] Dec. of Matthew N. Metz, ¶2

CASE NO. C 07 5551 WHA

5

PLAINTIFF LAY SIOK LIN'S OPPOSITION
TO DEFENDANTS' MOTION TO TRANSFER

for declaratory judgment now at bar against Lay Siok Lin only in the Eastern District of New York on September 21, 2007.[13] Teitelbaum's complaint seeks a judgment declaring the rights of the parties pursuant to 28 U.S.C. §2201 concerning Teitelbaum's liabilities and duties under the securities laws. Teitelbaum did not notify Lay Siok Lin or her counsel of the lawsuit, or make any serious attempts at service, until November 7, 2007, the day that Lay Siok Lin's counsel notified Teitelbaum's counsel that Teitelbaum had been sued in the Northern District of California.[14] Furthermore, Teitelbaum's complaint, as originally filed, addressed only Teitelbaum's contention that he had not violated securities laws. Teitelbaum's declaratory judgment complaint filed on September 21, 2007 did not include critical parties such as Bruce Mabey, the most active perpetrator of the fraud and misconduct alleged, nor Platinum Too, LLC, the original obligor on the notes. It failed to address the claims for breach of contract against Platinum Too, LLC, and common law fraud against all defendants.

### III.

### ARGUMENT

A.  <u>Discretion to Decide Motion for Transfer Vested in Trial Court</u>

By enacting 28 USC §1404(a), Congress "intended to place discretion in the district court to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'" <u>Stewart Org., Inc. v. Ricoh Corp.</u>, 487 U.S.

---

[13] *Id.*, ¶3
[14] *Id.*

CASE NO. C 07 5551 WHA
6
PLAINTIFF LAY SIOK LIN'S OPPOSITION
TO DEFENDANTS' MOTION TO TRANSFER

22, 29 (1988). Section 1404(a) is intended "to prevent waste of 'time, energy and money' and 'to protect litigants, witnesses and [the]public against unnecessary inconvenience and expense." *BBC International Ltd. v. Lumino Designs, Inc*., 441 F.Supp.2d 438 (E.D.N.Y. 2006).

Once a court determines that venue would be proper in another district, the court must consider "all relevant factors to determine whether on balance the litigation would more conveniently proceed and the interests of justice better served by transfer to a different forum." *Jumara v. State Farm Ins. Co.*, 55 F.33rd 873, 879 (3rd Cir. 1995) *citing* Wright, Miller & Cooper, Federal Practice and Procedure § 3847 (2d ed. 1986).

B.    First-to-file rule is discretionary and equitable in nature

The application of the "first-to-file" rule is grounded in "equitable principles". *E.E.O.C. v. University of Pennsylvania*, 850 F.2d 969, 977 (3rd Cir. 1988). The exceptions to the rule are also based on equitable considerations. *See Guthy-Renker Fitness, LLC v. Icon Health and Fitness Inc.,* 179 F.R.D. 264, 269 (C.D.Cal. 1988).

In the case at bar, Defendant's Teitelbaum's actions surrounding the filing of the New York lawsuit were unfair and oppressive. Teitelbaum filed said suit for declaratory judgment without notifying Lin or her attorney that he had done so, or even making a valid attempt at service. Rather, Teitelbaum's suit was little more than a "forum grab". The fact that Teitelbaum suit was filed was recognized only after Lin's attorney notified Teitelbaum's attorney that the suit had been filed. A copy of that correspondence is attached to the Declaration of Matthew N. Metz as Exhibit A.

CASE NO. C 07 5551 WHA

7

PLAINTIFF LAY SIOK LIN'S OPPOSITION
TO DEFENDANTS' MOTION TO TRANSFER

Because Teitelbaum's suit was filed with unclean hands, Teitelbaum should not be able to avail himself of the equitable "first-to-file" doctrine.

C. <u>Preemptive Strikes Disfavored for Purposes of Applying the First-Filed Rule</u>

Courts often depart from the so-called "first-to-file" rule cited by Defendants in their brief when the first-filed lawsuit is found to be "anticipatory" or a "preemptive strike". For example, in *Lewis v. National Football League*, 813 F.Supp. 1, 4 (D.DC. 1992), the district court refused to apply the first-filed rule when the NFL's suit was filed under imminent threat of litigation. Similarly, in *Schwarz v. National Van Lines, Inc.,* 317 F.Supp.2d 829, 833 (N.D. Ill. 2004), the district court did not give weight to National's first-filed declaratory judgment action because said action was brought under direct threat of imminent litigation.

Paragraphs 25 and 26 of Teitelbaum's First Amended Complaint filed in New York, (attached as Exhibit C to the declaration of John Heffner submitted with Defendant Mabey's moving papers) admits that "Mr. Metz stated that Platinum failed to register the Notes as securities and to make certain disclosures pursuant to the Securities Law and made false, misleading, and/or fraudulent representations in connection with the issuance of the Notes. Mr. Metz stated that Teitelbaum was personally liable to the defendant for such purported violations and misdeeds since he was a 'controlling person' within the meaning of the Securities Law." Less than one month thereafter, Teitelbaum had filed the declaratory judgment action at bar.

D. <u>Venue is Proper in the Northern District of California</u>

Not having been informed that Teitelbaum brought the action at bar, Lay Siok Lin

filed an action against Teitelbaum, Mabey, and Platinum Too, LLC in the U.S. District Court for the Northern District of California on October 31, 2007.  Venue in said action was based on 15 U.S.C. § 77v(a), based on the fact that many of Teitelbaum's and Mabey's securities violations occurred in the Northern District of California, and on the basis that Teitelbaum, Mabey, and Platinum Too conduct business in said district.  Furthermore, a substantial part of the events or omissions with respect to which Teitelbaum seeks a declaratory judgment in this action occurred in the Northern District of California.  In federal question cases, venue is proper in "… a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred…"  28 USC §1391(b).

E. <u>Equitable Factors Weigh in Favor of Retention of Action in the Northern District of California</u>

Courts generally look at nine factors in making a determination regarding a motion to transfer. *In re Hanger Orthopedic Group, Inc. Sec.Lit.*, 418 F.Supp.2d 164 (E.D.N.Y. 2006). "(1) the convenience of the witnesses, (2) the convenience of the parties, (3) the locus of operative facts, (4) the availability of process to compel the attendance of unwilling witnesses, (5) the location of relevant documents and the relative ease of access to sources of proof, (6) the relative means of the parties, (7) the forum's familiarity with the governing law, (8) the weight accorded the plaintiff's choice of forum, and (9) trial efficiency and the interest of justice, based on the totality of circumstances." *Id.*

**1.    Transfer of Venue to the Northern District of California Will Serve
       the Convenience of Witnesses.**

The convenience of non-party witnesses is usually the most important factor to

CASE NO. C 07 5551 WHA

9

PLAINTIFF LAY SIOK LIN'S OPPOSITION
TO DEFENDANTS' MOTION TO TRANSFER

consider in deciding whether to depart from the plaintiff's choice of forum. *A.J. Industries, Inc. v. United States Dist.Ct.* (9th Cir. 1974) 503 F.2d 384, 389. Central issues in this securities fraud case include: (1) Did Teitelbaum and Mabey and their company Platinum Too, LLC have a valid contract with ProtoStar Ltd., the San Francisco based company, to solicit investments in their firm on ProtoStar's behalf; (2) Did Teitelbaum and Mabey invest the money they obtained from Lay Siok Lin and Lay Siok Lin's assignor in ProtoStar as promised? The answers to these questions will require the testimony of Philip Father and Paul Froelich, the CEO and CFO of ProtoStar, Ltd. respectively, both of whom live and work in the Northern District of California where the company is based. Clearly, the Northern District of California would be a significantly more convenient forum for Mr. Father and Mr. Froelich.

The other key non-party witness in the case is Mei Lin Lay. Mei Lin Lay is a financial advisor who divides her time between San Jose, California and Jakarta, Indonesia. Ms. Mei Lin Lay, the sister of Lay Siok Lin, was the principal liaison between Lay Siok Lin and Teitelbaum and Mabey, and was the recipient of most of the marketing pitches of the Defendants. She will testify as to Teitelbaum's and Mabey's representations regarding Platinum Too, LLC and the promised investments in ProtoStar, Ltd. Clearly, the Northern District of California would be a significantly more convenient forum for Ms. Lay Siok Lin.

2. **Convenience of the Parties**

Lay Siok Lin's sister Ing resides in the San Jose area, and Lay Siok Lin frequently travels there to visit her sister, and therefore San Jose is a much more

convenient forum. It is also much closer to Indonesia.

Accordingly, consideration of the convenience of the parties militates toward retention of venue in the Northern District of California. Teitelbaum's co-defendant in the Northern District of California Action, Bruce Mabey, resides in Salt Lake City, Utah. The distance from Salt Lake City to San Francisco is 754 miles, less than 40% of the 2173 mile distance between Salt Lake City and New York City.

3. **Locus of Operative Facts**

The locus of operative facts is a "primary factor" in determining a motion to transfer venue. ZPC 2000, Inc. v. The SCA Group, Inc., 86 F.Supp.2d 274, 279 (S.D.N.Y. 2000). Numerous substantive meetings occurred in the Northern District of California between Mabey and Mei Lin Lay regarding repayment of the Promissory Notes. Furthermore, the company that Teitelbaum and Mabey allegedly represent, ProtoStar, Ltd. is based on San Francisco, and it is presumably in San Francisco that Teitelbaum's and Mabey's relationship with ProtoStar CEO Philip Father occurred. San Francisco is also the location where Defendant Lay Siok Lin's money was to have been invested in Protostar, Ltd.

No meetings between the parties occurred in the Eastern District of New York. Consideration of the locus of operative facts militates toward retention of venue in the Northern District of California.

4. **Access to Sources of Proof**

Access to sources of proof also favor retention of venue in the Northern District of California. Key sources of evidence in this case are the financial and corporate

CASE NO. C 07 5551 WHA

11

PLAINTIFF LAY SIOK LIN'S OPPOSITION
TO DEFENDANTS' MOTION TO TRANSFER

records of ProtoStar, Ltd., which are located in San Francisco.

Although the promissory notes themselves state Platinum Too, LLC is "an investment company duly registered in the State of New York", said company was in fact never registered in New York.

5. **Relative Means of the Parties**

Teitelbaum is a wealthy international businessman and former investment banker. Defendant is an Indonesian investor. Consideration of their relative means is a neutral factor.

6. **Plaintiff's Choice of Forum**

This issue was discussed in more detail above. Teitelbaum's choice of New York as a forum should be given little weight because of the inequitable manner in which he brought suit, and the "preemptive strike" nature of his declaratory judgment action.

Plaintiff's actions in this case undermine an important value in the civil justice system—pre-litigation settlement. Lay Siok Lin sought to obtain a settlement from Teitelbaum to avoid litigation. Rather than respond to the demand for payment, Teitelbaum proceeded to file a stealth lawsuit in the Eastern District of New York, solely to obtain jurisdiction there, even though there was no factual connection whatsoever with the district. Until notified of the California suit, Teitelbaum made no efforts to serve Lay Siok Lin, nor did he inform Lay Siok Lin's counsel of the lawsuit, even though they had been in settlement discussions shortly before.

Teitelbaum filed a lawsuit in the Eastern District of New York not in a legitimate attempt to resolve a dispute with Lay Siok Lin, but rather to "keep venue in his back

CASE NO. C 07 5551 WHA

12

PLAINTIFF LAY SIOK LIN'S OPPOSITION
TO DEFENDANTS' MOTION TO TRANSFER

pocket."  Teitelbaum is now asking that the court reward his devious actions by maintaining venue in this district.

Furthermore, Teitelbaum's failure to notify Lay Siok Lin's counsel or serve Lay Siok Lin caused her the additional expense of filing a lawsuit in California.  If Teitelbaum and his counsel had filed suit and notified her in a timely manner, said expense would likely have been avoided.

**7. Judicial Economy**

Judicial economy and efficiency are frequently valued based on comparative calendar congestion of the transferor and transferee districts.  *See, e.g. Hernandez v. Graebel Van Lines,* 761 F.Supp.983, 991 (E.D.N.Y. 1991)(docket conditions and calendar congestion is a "proper factor for the Court to consider").

For the 12 month period ending September 30, 2006, the median time for a civil case in the Eastern District to progress from filing to trial is 29 months, versus 25 months in the Northern District of California.  Congestion issues therefore favor transfer of the matter to California.  (*See* Administrative Office of the United States Courts, *Federal Court Management Statistics* (September 30, 2006),

**8.    Trial Efficiency and Totality of the Circumstances**

In the interests of justice and trial efficiency, this action should be retained in the Northern District of California.  A key issue in this case is whether Teitelbaum and Mabey were authorized by San Francisco based ProtoStar, Ltd. to secure investment in their company, and whether the moneys advanced to Platinum Too, LLC of Lay Siok Lin were actually invested with ProtoStar, Ltd. as Teitelbaum and Mabey had promised.  The

CASE NO. C 07 5551 WHA
13
PLAINTIFF LAY SIOK LIN'S OPPOSITION
TO DEFENDANTS' MOTION TO TRANSFER

financial officers and the financial records of Protostar, Ltd. are located in San Francisco. The key non-party witness to whom most of the sales pitches were made, Mei Lin Lay, lives nearly half the year in the Northern District of California. The totality of the circumstances militates toward retention of venue in the Northern District of California.

F. <u>Transfer rather than Dismissal Is Appropriate if Court Finds Venue More Appropriate in the Eastern District of New York</u>

In the event that the court decides that venue is preferable in the Eastern District of New York, Lin hereby requests that this action be transferred to the Eastern District of New York. As stated in Schwarzer, *Civil Procedure Before Trial,* p. 4-68 (The Rutter Group: 2007) "Normally, if there is another district or division in which the action could have been brought, transfer is preferred to the harsh remedy of dismissal. Transfer avoids any statute of limitations problems and the necessity of filing and serving a new action."

## IV.

## CONCLUSION

Defendant's assertion of the first-to-file doctrine fails under the "preemptive strike" exception to said doctrine. Analysis of the relevant factors strongly favor retaining venue of this case in the Northern District of California. The Northern District of California is much more convenient for the key non-party witnesses in the case. Many of the key facts and events relating to the dispute pertain to the Northern District of California. Corporate records which would help prove fraud are located in the Northern District of California.

CASE NO. C 07 5551 WHA

14

PLAINTIFF LAY SIOK LIN'S OPPOSITION
TO DEFENDANTS' MOTION TO TRANSFER

In the event that the court rules that venue in the Eastern District of New York is preferable, Lin hereby requests that said action be transferred to the Eastern District of New York.

                                  Respectfully Submitted,

DATED: May 7, 2008.           METZ LAW GROUP, PLLC

                                  By: /s/ *Matthew N. Metz*

                                  Matthew N. Metz
                                  Attorney for Lay Siok Lin

CASE NO. C 07 5551 WHA

15

PLAINTIFF LAY SIOK LIN'S OPPOSITION
TO DEFENDANTS' MOTION TO TRANSFER